(Court of Appeal, Parish of Orleans.)

## MARY E. KELLY vs. NATIONAL CASUALTY CO.

1. Forfeitures are not favored by law and, in case of insurance, where the company has pursued a course of conduct which leads the insured honestly to believe that his rights will be protected, the company will not be permitted to claim a forfeiture, although incurred under the letter of the contract.

2. In an accident policy of insurance, the beneficiary in case of the accidental death of the insured stands in his shoes and her rights are co-extensive with his.

Appeal from the Civil District Court, Division "E."

John J. Reilley, for plaintiff and appellee.

M. H. Manion; Lemle, Jones & Moreno, for defendant and appellant.

H. W. Kaiser, E. B. Ellis, attorneys.

DUFOUR, J.—The plaintiff, beneficiary of an accident policy of insurance issued to her brother who was killed by an automobile on November 4th, 1910, sued to recover the amount of the policy, $400.00, and additional sum of $400.00 allowed as a penalty by Article No. 310 and attorney's fees.

The defense was that the policy had lapsed and been forfeited after November 1st, 1910, because of non-payment of premium under the following clause in the policy, which was monthly in its duration.

"If the payment of any renewal premium shall be made after the expiration of this policy, or if the

last renewal receipt, neither the assured nor the beneficiary will be entitled to indemnity. * * * The acceptance of any renewal premium shall be optional with the company.''

The evidence as the course of dealings between the insurer and the insured herein shows that the former for several months did not insist on the payment of the premium on the exact day upon which it was due.

For five months, the premium due on the first was accepted by the company at a date from five to twenty seven days later than that upon which it was due.

No renewal receipt was ever issued by the company, and it is quite clear that if, under the clause cited, the risk was not covered in the **interim**, between the date the premium was due and that on which it was paid, the insurer was charging and receiving a premium without the corresponding obligation of furnishing indemnity.

The contract of insurance is one of good faith and this consideration forbids so unfair and unequitable a view.

It is more consonant with fair dealing to assume that the insurer waived the forfeiture, particularly when we consider the following notice sent by the company to Kelly on October 17th, 1910, in reference to the premium due October 1st.

"We do not believe that it was your intention to allow the policy to lapse and would suggest your giving it immediate attention * * *''

This language unmistakably shows the company's own construction to be that the policy had not lapsed by the failure to pay the premium on the exact day.

Without resorting to the jurisprudence of other jurisdictions, we have had no difficulty in reaching the conclusion, under our own, that the insurer by its conduct

led the insured to believe that the letter of the policy had been waived, and that it cannot now be allowed to "mend its hole" to plaintiff's detriment.

40 An., 776; 52 An., 1740; 121 La., 939.

Counsel urges that Act 310 of 1910 is intended to provide the time for idemnifying the assured in case of illness and accident and does not refer to any payment to be made to a beneficiary under an accident policy.

The policy provides that Mary Kelly shall be the beneficiary in case of the accidental death of the assured.

Under the contract she stands in his shoes and her rights are co-extensive with his.

To say that in case of accident without death the insurer is liable and that, in case of death, it is not, is to do violence to the purpose of a law intended to enforce prompt discharge by a corporation of a contractional obligation.

The statute the validity of which is not attacked, provides a penalty equal to the amount due under the terms of the policy, for delaying payment for more than thirty days without just and reasonable grounds, and also of reasonable attorney's fees.

We think this a proper case for the influction of the penalty.

The judgment was in favor of plaintiff as prayed for.

Judgment affirmed.

November 20th, 1911.

December 18th, 1911, Rehearing granted.

## ON REHEARING.

1. An estoppel cannot be predicated upon facts showing a course of conduct strictly within the express terms of the contract.
2. The penalties prescribed by Act 310 of 1910 will only be imposed where the insurer resists payment without just and reasonable grounds; and such a case is not presented when it is shown that the insurer resisted the claim solely because it misapprehended the law applicable to the case and that the insured shared in and was primarily responsible for such misapprehension.

GODCHAUX, J.—According to the terms of the policy its term began on January 28th, 1910, and continued "until * * * the first day of March, 1910, and for such further monthly period, stated in the renewal receipts, as the payments of the premium specified in the application will maintain this policy and insurance in force." The application fixed the monthly premium at $1.55 and prescribed that it should be payable in advance without notice.

The policy further provides:

"If the payment of any renewal premium shall be made after the expiration of this policy or of the last renewal receipt, neither the assured nor the beneficiary will be entitled to indemnity for any * * * injury happening between the date of such expiration and * * * the date of the receipt of such renewal payment * * * The acceptance of any renewal premium shall be optional with the company."

The foregoing constitute all the provisions contained in the policy itself governing its terms, its expiration, and its renewal and we construe them to mean that the policy was to expire on March 1st, but could, with the consent of the parties, be continued thereafter for monthly

periods, upon the payment by the insured in advance and the acceptance thereof by the company of the monthly premium of $1.55, it being agreed that between the date of each expiration and the date of each renewal there should be no insurance contract existing between the parties and consequently no indemnity recoverable for injuries arising during that period.

Now for the monthly periods beginning March 1st, April 1st and May 1st, respectively, the policy was renewed by the payment of the specified premiums in advance, but the policy was allowed to expire on June 1st for failure to pay the renewal premium prior to that date and it was not renewed until June 27th, when the specified monthly premium of $1.55 was paid by the insured and accepted by the company. Under the very terms of the provisions quoted the payment of June 27th had the effect of renewing the policy for a "further monthly period" which would expire on July 27th. Before the latter date, and again before August 27th, and again before September 27th, and again before October 27th, the specified monthly premiums were respectively paid by the assured and accepted by the company and the term of the policy was thereby successively renewed so that it expired on November 27th, that is, at a date later than that upon which the loss complained of occurred.

In view of the policy provisions quoted and the facts disclosed as to the payment of the premiums, it seems clear that the policy was in force on the date of the accident and that the beneficiary is entitled to recover thereon.

Defendant urges, however, that it was intended the policy should comprise the calendar months, so that each monthly term should expire on the last day of each calendar month and so that the payment of a monthly pre-

mium after the first day of the month would renew the policy for a period beginning on the date of such payment and ending on the last day of the calendar month in which such payment was made. For instance, defendant claim that the premium paid on June 27th carried the policy only to the last day of that month, namely, June 30th; and that the payments on July 8th, August 17th, September 5th and October 19th carried the monthly expirations respectively to July 31st, August 31st, September 30th and October 31st, so that there was in fact no insurance contract in force on the day of the accident in November.

This interpretation, which would mean that in June there was a renewal for a three-day period and in July, August, September and October for periods averaging considerably less than a month's duration (though the premium for a full month was in each instance paid) does not appeal to the conscience of the Court and appears to be in conflict with the clear intent of the policy the effect that the renewals should be for full monthly periods or terms. Unless clearly stipulated in the policy, the Court would not adopt a view that would permit the collection of a premium by the company without a corresponding obligation on its part to furnish indemnity.

And, in fact, to sustain its contention on this score, defendant ignores the policy itself and relies principally upon the back of a small folder, termed a ''receipt book,'' in which was entered an acknowledgment by the defendant's collector of the receipt of premiums and the date of their respective payments. But even if the provisions of the ''receipt book'' supported defendant's view (and it is difficult to percieve how these provisions can be so construed) the Court would be bound to disregard them as being in conflict with the express terms of the policy, particularly

as we find that the policy itself prescribes that no agent can change its terms and that "no change of the policy or waiver of its provisions shall be valid unless agreed to in writing by the president or secretary of the company and endorsed thereon." The "Receipt Book" contains no such agreement and is lacking in such endorsement.

The majority of the Court is presently of the opinion that the plea of estoppel upon which our original decree was based is without relevancy, or if relevant, is not well founded, under our present view as to the duration of the several terms of renewal. A consideration of the plea was rendered unnecessary only because we then were of the opinion that the renewals were for terms covering the fractional part of the month and expired on the last day of each calendar month, and we held that the company had by its course of conduct established a custom which estopped it from asserting that the policy had lapsed.

That precise question has been adjudicated upon on several occasions in jurisdictions other than this, and it has been uniformly held that under the terms of policies providing for renewals for fractional parts of months, the plea of estoppel cannot be maintained when, as in this case, the acceptance of premiums after maturity, would be strictly within the purview of the policy, and could not be considered as establishing a course of conduct that would create a custom outside of and beyond the provisions of the contract.

> Crosby vs. Insurance Company, 80 Atlantic Report, 817.
>
> Mac Arthur vs. Insurance Company, 152 Ill. App 507.
>
> Roberts vs. Insurance Company, 212 Ill., 382.

The Court likewise is presently of the opinion that the

case does not present the features that would authorize the infliction of the penalties prescribed by Act 310 of 1910 for failure to make payment upon "just and reasonable grounds." From the moment when the loss was incurred, both parties, while in accord as to the facts, appear to have mutually entertained the impression that the case was governed by the principle of estoppel. In fact plaintiff's petition, which sets forth all the facts appears to pitch plaintiff's demand on that ground; and defendant's resistence of the claim was due primarily to its conviction that the plea of estoppel was not well founded, a position in which it was sustained by the cases heretofore cited. While the plaintiff is not precluded from recovery by asserting an erroneous conclusion of the law upon the admitted facts, still the defendant was justified in resisting the claim as thus presented and should not be penalized for its action.

Our previous decree should consequently be amended in so far as it allowed recovery of the penalties and attorney's fees under the statute.

It is accordingly ordered, that the judgment appealed from be amended by reducing the amount thereof from $800.00 to $400.00, and by striking out the item of $50.00 for attorney's fees, and as thus amended the said judgment is affirmed, appellee to pay the costs of appeal and appellant those of the lower Court.

Previous decree amended.

Dufour, J., concurs for the reasons stated, but also adhers to the original opinion, except as to penalties.

March 18th, 1912.